Filed 10/21/21  P. v. Buccafurri CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. CONSTANCE A. BUCCAFURRI, Defendant and Appellant. | B304746 Los Angeles County Super. Ct. No. LA087623 |

APPEAL from an order of the Superior Court of Los Angeles County, Alan K. Schneider, Judge. Reversed and remanded with instructions.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant and appellant Constance A. Buccafurri was charged with stalking, making annoying phone calls, and multiple counts of making criminal threats. Before trial, she requested mental health diversion in lieu of prosecution. The trial court denied Buccafurri's request for diversion, concluding she posed an unreasonable risk of danger to public safety. Buccafurri pled no contest to one count of criminal threats and one count of stalking. On appeal, she argues the trial court abused its discretion in denying her request for mental health diversion. We agree.

# PROCEDURAL BACKGROUND

In 2017, the Los Angeles County District Attorney filed an information charging Buccafurri with stalking (Pen. Code,[1] § 646.9, subd. (a); count one), five counts of making criminal threats (§ 422, subd. (a); counts two through six), and one count of making annoying telephone calls (§ 653m., subd. (a); count seven).

In March 2018, the court, over defense counsel's objection, declared a doubt as to Buccafurri's competency under section 1368. The court appointed a psychiatrist to prepare a competency report. Six months later, the court found Buccafurri competent to stand trial. She pled not guilty to all counts.

On December 6, 2019, the trial court denied Buccafurri's request for mental health diversion. The trial court found she would pose an undue danger to the public that would make mental health diversion inappropriate in this case. Buccafurri

---

1      All undesignated statutory references are to the Penal Code.

then pled no contest to counts one (stalking) and six (making criminal threats). The court accepted the plea and dismissed the remaining counts under section 1385. The court sentenced Buccafurri to three years and eight months in state prison, consisting of an upper term of three years on count one and a consecutive eight-month term on count six.

On December 10, 2019, Buccafurri moved to vacate her plea. The court denied the motion, finding no good cause to support it.

Buccafurri filed a notice of appeal on February 6, 2020, which this court deemed constructively timely filed. With the permission of this court, Buccafurri sought and obtained a belated certificate of probable cause from the trial court.

## FACTUAL BACKGROUND[2]

Buccafurri had a work relationship with Blake Leibel. They planned to start a production company together, and they met with Leibel's accountant, Steven Green, to discuss the details. Buccafurri and Leibel's relationship turned romantic in December 2015. They lived together in Leibel's condominium in West Hollywood, then moved to Leibel's house. In January 2016, Leibel moved back to his West Hollywood condominium and reconciled with a former girlfriend. Buccafurri continued living in Leibel's house.

Leibel instructed Green to sell the house and have the proceeds go to Leibel's ex-wife, Amanda Braun-Leibel. Green complied with Leibel's request, and Buccafurri was evicted from

---

2   The following facts are taken from the preliminary hearing, as well as the psychiatric report that was prepared to assess Buccafurri's suitability for mental health diversion.

3

the house in October 2016. Buccafurri felt victimized by Green, whom she claimed sold the home illegally and in breach of a fiduciary duty to her. According to the psychiatric report, Buccafurri said she became "'obsessed' with obtaining what she perceived as justice from Mr. Green and Ms. Braun-Leibel." In late 2017, Buccafurri sent threatening text messages to Braun-Leibel. She also sent e-mails to Green's attorney, Mike Balikian, in which she threatened to kill Green.

In an e-mail to Balikian dated December 8, 2017, Buccafurri wrote: "I am ready to put a bullet through Steven Green's head purposefully and through the whole case and put Blake back up on the death chair." In an e-mail to Balikian dated December 9, 2017, Buccafurri wrote: "Steve Green will be dead. Who does Steve think he is? I will enter an insanity plea ridding the earth of Steve Green. It is completely premeditated. There will not be another tax season for Steve Green ever again." In another e-mail to Balikian dated December 12, 2017, Buccafurri wrote: "And I am going to pull the trigger on Steven Green. Report me to the FBI, you [expletive] fraud. Do you want Steven's dead body on your doorstep?" In an e-mail to Los Angeles County Sheriff Sergeant William Cotter dated December 14, 2017, Buccafurri wrote: "I'm tipping you off on a homicide. I'm going to murder Steven M. Green if you are . . . not [going to] bring me justice. He is a[n] [expletive] middleman." Buccafurri's e-mails caused Green to fear for the safety of himself and his family.

Buccafurri sent about 200 text messages to Braun-Leibel from October 23, 2017 to October 26, 2017. In these messages, Buccafurri said: "I'll do jail time for you, no problems"; "[y]ou're the other murder"; "I would break your [expletive] arms. You did a disservice to me. I would happily do jail for you. You pushed me

too far"; and "[y]ou [messed] with the right person to teach you with a life lesson." These text messages caused Braun-Leibel to fear for her and her family's safety.

On February 16, 2018, Los Angeles County Sherriff Sergeants Robert Martindale and William Cotter interviewed Buccafurri. Buccafurri told them she believed Green and Braun-Libel swindled tens of millions of dollars from her. She said her e-mails were intended to frighten Green, and confirmed that she had threatened to break Braun-Leibel's arms.

## DISCUSSION

### The Trial Court Abused Its Discretion When It Denied Buccafurri's Request for Mental Health Diversion

#### A. Applicable Legal Principles

Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines "pretrial diversion" as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment[.]" (§ 1001.36, subd. (c).)

A trial court may order pretrial diversion under the statute if it finds the defendant meets all of the following criteria: (1) the defendant suffers from a recognized mental disorder; (2) the defendant's mental disorder was a significant factor in the commission of the charged offense; (3) the defendant's symptoms would respond to mental health treatment; (4) the defendant consents to diversion; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable

5

risk of danger to public safety if treated in the community. (§ 1001.36, subd. (b)(1).)

We review a trial court's dangerousness finding under section 1001.36 for abuse of discretion. (*People v. Moine* (2021) 62 Cal.App.5th 440, 448-449 (*Moine*).)

## B. Relevant Proceedings

Buccafurri was arrested on February 16, 2018. On March 22, 2018, over defense counsel's objection, the court declared a doubt regarding her competency and ordered criminal proceedings suspended. Patton State Hospital began treating her in July 2018 and discharged her in October 2018 to Century Regional Detention Facility (CRDF) with a diagnosis of Unspecified Schizophrenia Spectrum or Other Psychotic Disorder, Sleep Disorder, and Alcohol Use Disorder. On October 5, 2018, the court found her competent to stand trial and reinstated criminal proceedings.

Following discharge from Patton State Hospital, Buccafurri remained in custody at the CRDF Mental Health High Observation Housing unit. By November 2018, progress reports noted Buccafurri's "good" mood. CRDF transferred her to the General Population in February 2019, where she continued to receive psychiatric treatment.

On June 18, 2019, Buccafurri attended her preliminary hearing, without incident. Thereafter, she attended court hearings on July 1, 2019, August 6, 2019, August 22, 2019, September 9, 2019, and September 17, 2019, all without incident.

On September 17, 2019, the trial court appointed the USC Institute of Psychiatry and Law to examine Buccafurri regarding mental health diversion. Collin Lueck, M.D., and Lorraine E. Cuadra, Ph.D., prepared a psychiatric report based on meetings

6

with Buccafurri on October 8, 2019, October 21, 2019 and November 15, 2019.

Lueck and Cuadra completed their report on November 21, 2019. The report concluded Buccafurri satisfied the six criteria for mental health diversion. With respect to the dangerousness criterion at issue in this case, the report stated: "If the defendant adheres to the recommendations outlined in this report, she will not pose an unreasonable risk of danger to the public." The report recommended numerous treatment measures to help minimize Buccafurri's danger to public safety, including monthly psychiatric follow-ups for medication management to reduce the likelihood of future manic episodes; enrollment in a dual-diagnosis residential treatment program for an extended period; weekly psychotherapy after release from the residential treatment program; weekly attendance at Alcoholics Anonymous/Narcotics Anonymous meetings; and random weekly drug tests.

The report concluded seven factors reduced Buccafurri's risk of danger to public safety: (1) "she ha[d] no history of violent behavior"; (2) her "mental health condition ha[d] been stable with psychiatric treatment since February 2018" with no institutional misconduct; (3) she "obtained important benefits from [ ] group therapy, including stress coping skills and interpersonal communication skills"; (4) "she noted the mood-stabilizing effect of her medication"; (5) "she [wa]s able to discuss alternative framings of events without arguing," and "ponder the motives of others"; (6) "she stated her willingness to enter into treatment in the community to address her mental health and substance use issues"; and (7) she "exhibit[ed] some insight into the wrongfulness of [her] offense." It concluded two factors increased

her risk of danger to public safety absent treatment: (1) "her longstanding alcohol/drug use history"; and (2) "limited psychiatric treatment outside of a structured setting."

On December 6, 2019, the court found Buccafurri unsuitable for mental health diversion, reasoning:

> "I do believe much of the contents of this [report] is relevant to circumstances underlying these crimes. However, I don't believe under [section] 1170.18 that I can state that the defendant does not pose an unreasonable risk of danger to the public safety, and primarily it's because of the evaluation of her, of the defendant, and the belief that proper treatment has been helpful to the defendant.

> "I agree that – but I have not seen evidence of that, outside of custodial environments, and based on the nature of the crimes here, the nature of the threats and the pervasive nature of the allegations here, I do find that she would pose an undue danger to the public that would make mental health diversion inappropriate in this case.

> "I also did consider her statement to the court, which counsel has a copy of, and I did read and consider that as well. I hope that what she says in those reports is her true desire. She has been sober for quite some time. She does appear to be properly medicated, and I would state that her appearance in

court, her presentation in court over a fair period of time has been positive."

Right after denying diversion, however, the court accepted Buccafurri's plea, which, because of time served, led to her prompt release.

## C. Analysis

Buccafurri argues the court's denial of her request for mental health diversion was an abuse of discretion. Specifically, she contends the trial court's ruling was unreasonable because her "prior criminal history, her offenses two years prior to the hearing, and her improved condition while in custody did not support a finding that [she] would likely [commit a super strike such as] murder . . . if granted mental health diversion." In support of her argument, Buccafurri notes the court concluded she was too dangerous to receive mental health treatment in the community, then immediately accepted a plea bargain that led to her release from custody. The Attorney General counters: "The trial court . . . properly denied [Buccafurri's] request for mental health diversion because [she] issued numerous death threats, the probation department opined [she] was a serious danger to the victims and recommended the maximum jail term, and the psychiatric report found she would not be an unreasonable risk of danger only if she followed a strict regimen of treatment."

"Section 1001.36's definition of 'unreasonable risk of danger to public safety' is supplied by reference to section 1170.18. [Citation.]" (*Moine*, *supra*, 62 Cal.App.5th at p. 449; see § 1001.36, subd. (b)(1)(F).) Section 1170.18, in turn, defines "unreasonable risk of danger to public safety" as "an

9

unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) "The violent felonies encompassed in this definition 'are known as "super strikes" and include murder, attempted murder, solicitation to commit murder, assault with a machine gun on a police officer, possession of a weapon of mass destruction, and any serious or violent felony punishable by death or life imprisonment.' [Citation.]" (*Moine*, *supra*, at p. 449.) In determining whether a defendant poses an unreasonable risk of danger to public safety, a trial court may consider "the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (b)(1)(F).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Applying these principles, we conclude the trial court's decision not to grant diversion was an abuse of discretion. In denying Buccafurri's request for diversion, the court professed concern that Buccafurri would pose an undue danger to the public if released to participate in a mental health diversion program. Immediately after issuing its ruling denying her request for diversion, however, the court noted Buccafurri had made considerable progress while in custody, and expressed its willingness to accept a plea deal that would result in Buccafurri being released within "a couple of weeks."[3] If the court believed

<hr>

3    The court stated: "So, Ms. Buccafurri, I do believe that you have made a lot of progress while you are in custody, and I would

10

Buccafurri's risk of danger to public safety was low enough to release her a mere two weeks after the mental health diversion hearing, we see no logical reason for the court to have concluded the danger she would pose if granted mental health diversion was high enough that she might commit a super strike such as murder or attempted murder. We also note that the court's decision to deny diversion but accept the plea was in direct conflict with the psychiatric report's conclusion that mental health treatment would make Buccafurri *less* of a danger upon release.

We are not persuaded by the Attorney General's argument that the trial court's ruling was proper in light of the probation report recommendation, severity of the threats, and lack of a showing of successful treatment in a non-penal setting.[4] As the psychiatric evaluation stated, Buccafurri made considerable progress during her time in custody and, with proper treatment, would not pose an unreasonable risk of danger if granted diversion. The probation report predated the psychiatric report by over 18 months, and the probation officer never interviewed Buccafurri.

---

like to see that continue . . . . It does appear that there is a negotiated disposition. Ms. Buccafurri has been in custody for quite some time and this sentence does appear to be an appropriate sentence. You will be out very soon. I would be surprised if they kept you very long at all, and no later than a couple of weeks would be sort of maximum."

4      Our decision in this case is in no way intended to minimize the severity of the threats Buccafurri made or the fear of harm those threats inflicted upon the victims.

As the parties note, two recent cases are instructive – *Moine, supra*, 62 Cal.App.5th 440 and *People v. Williams* (2021) 63 Cal.App.5th 990 (*Williams*). In *Moine*, like here, the trial court denied the defendant diversion on the ground that he was too dangerous to be treated in the community. (*Moine*, at p. 449.) The Court of Appeal reversed, concluding, in light of "the high standard applicable to a finding of 'dangerousness' under section 1001.36[,]" the record did not support the trial court's ruling. (*Id.* at p. 451.) In reaching this conclusion, the court noted two psychiatrists opined Moine posed a low risk of committing assault and his criminal history consisted only of misdemeanors. (*Ibid.*) The court also found it significant that the trial court released Moine into the community on bond for a period of over two years, which indicated it "necessarily found that Moine was not likely to cause 'great bodily harm to others' if released. [Citation.]" (*Ibid.*) The court explained: "It is logically inconsistent to deny mental health diversion on the ground that Moine was likely to commit a super-strike offense, while simultaneously finding he was not likely to inflict great bodily injury on persons in the community." (*Ibid.*)

     *Williams*, like *Moine*, arose from a trial court's conclusion that diversion was unwarranted because the defendant posed an unreasonable risk to public safety. (*Williams, supra*, 63 Cal.App.5th at p. 992.) The *Williams* court concluded reversal was compelled under *Moine*. (*Williams, supra*, at p. 1003.) *Williams* explained that, similar to the defendant in *Moine*, "Williams's charges [we]re not super-strike offenses, he pose[d] a low risk to public safety in the uncontroverted opinion of two mental health professionals, there is no evidence he owned, possessed or had access to any weapons . . . and he, too, was

released on bond for more than two years without incident." (*Ibid.*) On these facts, the court concluded it could not sustain the trial court's finding that "Williams was reasonably likely to commit a super-strike offense if granted diversion and treated in the community." (*Ibid.*) The court further explained: "In enacting a mental health diversion program, the Legislature sought to expand the use of community-based mental health treatment in order to prevent defendants with treatable mental illness from cycling in and out of our criminal justice system." (*Id.* at p. 1004.)[5]

We agree with Buccafurri that reversal is warranted under *Moine* and *Williams*. Similar to the defendants in those cases, here, none of Buccafurri's pending charges or past convictions were super strikes,[6] and the mental health professionals who evaluated her concluded she would not pose an unreasonable risk of danger to the public if she adhered to mental health treatment.

---

[5] The court noted the mental health diversion law's expressly-stated purposes are to "'"promote . . . [¶] [i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety," "[a]llowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings," and "[p]roviding diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a), (b), and (c).)' [Citation.]" (*Williams, supra*, 63 Cal.App.5th at p. 1004.)

[6] Buccafurri's prior criminal history consists of three misdemeanor convictions: one driving under the influence conviction in 2012; one intoxication conviction in 2012; and another intoxication conviction in 2016.

Additionally, as in *Moine* and *Williams*, here, the trial court's dangerousness finding is undermined by its decision to release Buccafurri from custody.

With respect to the logical inconsistency between the court's dangerousness finding and decision to accept a plea leading to Buccafurri's release, the Attorney General argues those two rulings were governed by separate legal standards, and, when viewed through the separate lenses of those two standards, both decisions stand as reasonable exercises of discretion. We are not persuaded. We are sympathetic to the difficulties faced by trial courts when making important decisions, such as the ones made in this case, with differing standards and often with incomplete or outdated information. But the court's decision that Buccafurri could appropriately be released into the community pursuant to her plea agreement fundamentally calls into question the reasonableness of its ruling that she was too dangerous for diversion. This is particularly true in light of the psychiatric report's conclusion that Buccafurri would pose less of a risk if given mental health treatment upon release.

## DISPOSITION

The case is remanded to the trial court with directions to vacate Buccafurri's conviction and refer her to a pretrial mental health diversion program. When and if Buccafurri successfully completes diversion, the court shall dismiss the charges. In the event Buccafurri does not successfully complete diversion, her convictions and sentence shall be reinstated.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.


We concur:


MANELLA, P.J.


COLLINS, J.

15